UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH HUBERTS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-287- RLY-WTL |
| | ) | |
| ATA HOLDINGS CORP. WELFARE | ) | |
| BENEFIT PLAN, | ) | |
| Defendant. | ) | |

**DECISION ON REVIEW OF RECORD**

This matter is before the court for final ruling on Plaintiff's Complaint, which is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff, Joseph Huberts, received monthly, long-term disability benefits for a period of two and a half years. As of April 21, 2006, he has been denied further benefits. Those long-term disability benefits were made available to Huberts, as an ATA Airlines employee, through a qualified employee benefit plan. Defendant ATA Holdings Corp. Welfare Benefit Plan (the "Plan"), provided those benefits through insurance policies underwritten by Unum Life Insurance Company of America ("Unum"). Huberts claims he is still entitled to receive benefits under the policy provisions. The parties have declined oral argument, but have submitted briefs outlining their respective positions. They have also provided the court with the Plan's administrative record, containing Hubert's medical records and other documentation used by Unum in reaching its decision

1

to deny further benefits. The parties' submissions are complete and the matter is ripe for this court's review and determination.

**Standard of Review**

It is undisputed that the Unum disability policy provides Unum, acting as the Plan's designated claims fiduciary, with the discretion to determine a participant's eligibility for benefits. When such discretion is granted by the plan, the district court reviews a denial of benefits deferentially, generally asking only whether the fiduciary's decision was arbitrary or capricious. *Hess v. Reg-Ellen Mach. Corp. Employee Stock Ownership Plan,* 502 F.3d 725, 727 (7th Cir. 2007); *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 658-59 (7th Cir. 2005); *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). The court's review is limited to the evidence which was before Unum at the time it made its final decision. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 195 F.3d 975, 981-82 (7th Cir. 1999).

**Background**

Joseph Huberts was an operations manager for ATA Airlines. He stopped working on February 10, 2003, after suffering through several months of persistent headaches. The headaches Huberts endured, and continues to endure, include those which inflict short term, stabbing pain as well as those which cause him to complain of a more chronic, deep and dull aching. Huberts has pursued relief from numerous medical providers, but

he claims none have provided more than minimal relief.

An MRI of Huberts' brain in December of 2002 proved normal. Subsequent cranial and cervical MRIs have not helped to identify the cause of the headaches. Many other diagnostic and laboratory studies have shed no light on the source of the headaches. Periodically, he has been treated for health problems in addition to his headaches. Since his complaints began back in November of 2002, Huberts has been seen or treated by more than twenty medical professionals, including neurologists, psychologists and allergists. He has seen doctors specializing in rheumatology, cardiology and the treatment of pain. Huberts has received steroid injections, botox injections, acupuncture and several types of nerve blocks, with minimal positive results. Various pharmaceuticals have been prescribed which have provided him limited degrees of relief, but his complaints of both occasional, sharp pain headaches and a more consistent, dull aching of the head continue to this day.

During the early part of 2003, Huberts was being treated by Dr. John Scott, of Hoosier Neurology. This appears to be the time period when Huberts complained of having the severely painful headaches most frequently. Dr. Scott could not identify the cause of Huberts' headaches and referred him to many other doctors and medical providers for further tests and examinations. In connection with monthly examinations of Huberts, which he performed through March of 2003, Dr. Scott reported that Huberts demonstrated a mild "ptosis" (a drooping) of the right eyelid. Otherwise, Dr. Scott's

examinations of Huberts were described as being "unremarkable" and, in July of 2004, he completed one of Unum's Attending Physicians Statements, identifying his diagnosis as "idiopathic stabbing headaches" and stated that Huberts' limitations were that he was "unable to do any activity."

In September of 2004, Huberts began treatment with Dr. James Weintraub at the Michigan Head Pain & Neurological Institute. Between September 2004 and June 2005 Plaintiff received inpatient treatment at the Institute on three occasions without any noticeable improvement. In January of 2005, Huberts submitted a supplemental claim statement indicating that he was still unable to work due to an inability to focus or concentrate for extended periods. On February 14, 2005, Dr. Weintraub completed an Attending Physician Statement which stated under the category of "Limitations" that Huberts could not work during inpatient treatment; however, in response to the questions on the form asking if the patient was released to perform his occupation, or any occupation, Dr. Weintraub answered affirmatively in each case.

Huberts was paid long-term disability benefits through April 21, 2006. On April 21, 2006, after a review of his file by an in-house physician, Unum made a determination that Plaintiff was no longer entitled to long-term disability benefits, based upon his no longer being totally disabled from engaging in any gainful occupation and because the disability policy's limitation of twelve months of benefits for disabilities that are primarily based on self-reported symptoms had run. Huberts utilized the Plan appeal

provisions to challenge that determination, but Unum upheld its initial decision after the file was reviewed by a registered nurse, Laura Mininni, and one of its Physician Consultants, Dr. Stewart Russell, who is Board Certified in Occupational Medicine.

On appeal, the consulting physician was asked to respond to three referral questions after his file review. The three referral questions posed to Dr. Russell and the response he provided to each, in his letter of January 15, 2007, are set forth below:

> *1. Based on a review of the available medical records, including but not limited to clinical examination and diagnostic testing, what conditions (sickness or injuries) are adequately supported as of 4/21/2006 to present?*
>
> Chronic, refractory, self-reported headaches have consistently been complained of since he came on claim in 2003. I did not see where he has had treatment for his sphenoidal sinusitis since late 2004 so I assume this condition has likely resolved. I agree with Ms. Minnini that there are no supported gastrointestinal, rheumatologic, or endocrine conditions supported as of that date. There is no evidence that there is ongoing treatment for the lateral epicondylitis or plantar fasciitis. These likely resolved with the cortisone injections.
>
> *2. Of the conditions identified in response to question #1, are there any conditions (illnesses or injuries) supported whose manifestations (symptoms) are verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine as of 4/21/2006?*
>
> No. There is no support for an organic cause of his self-reported headaches. He has had several complete neurolgical work-ups by reputable institutions without determining the cause of the headaches. Demonstrated psychiatric conditions are likely aggravating or perpetuating this symptom complex, in my opinion.
>
> *3. Of the conditions listed in response to question #2, what are the associated restrictions and limitations for each condition, and for what time frame are they adequately supported by available medical information?*

>Mr. Hubert's physician has stated he may experience up to three headaches per week. In the past, the duration of the headaches has been from several seconds to several hours. Again, these are based on self-reported symptoms.

Based on the file reviews and Dr. Russell's letter, Unum denied Huberts' appeal, contending that any ongoing disability was supported principally by self-reported symptoms, and coverage for such disabilities had been exhausted.

## Policy Language

To be eligible for long-term disability benefits under the terms of the Unum policy, a participant must be "disabled" within the meaning of the Plan language. In pertinent part, that language provides:

>*You are disabled when Unum determines that:*
>
>*- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and*
>*- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.*
>
>*After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.*
>
>*The loss of a professional or occupational license or certification does not, in itself, constitute disability.*
>
>*We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. Unum will pay for this examination. We can require an examination as often as it is reasonable to*

*do so. We may also require you to be interviewed by an authorized Unum Representative.*

The policy also places limitations on the length of time that benefits will be payed under certain circumstances. Those limitations include:

*Disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 12 months.*

*Unum will continue to send you payments beyond the 12 month period if you meet one or both of these conditions:*

> *1. If you are confined to a hospital or institution at the end of the 12 month period, Unum will continue to send you payments during your confinement.*
>
> *If you are still disabled when you are discharged, Unum will send you payments for a recovery period of up to 90 days.*
>
> *If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.*
>
> *2. In addition to Item 1, if, after the 12 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Unum will send payments during the length of the reconfinement.*

*Unum will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.*

The phrase "self-reported symptoms" is defined in the policy.

***SELF-REPORTED SYMPTOMS*** *means the manifestations of your condition which you tell your physician, that are not verifiable using tests,*

> *procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to, headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, and numbness, and loss of energy.*

## Analysis

Plaintiff asserts that Unum's initial determination that benefits should be halted, after review by its in-house doctor, was made because the doctor "misconstrued information favorable to Mr. Huberts." He contends that his appeal was not given a review that was full and fair as ERISA requires and that Unum provided no rationale which would support its sudden change in position.

The bulk of the argument made by Huberts in his supporting brief is misplaced. He makes much of the fact that he has successfully pursued disability benefits from the government. Even if the basis for a social security determination of disability was the same as the basis for determining disability under the Unum policy, the question here is not whether Huberts is disabled. While Unum found a lack of disability to be part of the basis for stopping his disability benefits, it expressed another reason for ending the benefit payments, the expiration of the twelve month period for which benefits are paid for disabilities founded on self-reported symptoms, and it was on that basis that Unum denied Huberts' appeal. So, the question that must be answered now is whether his disability is "primarily based on self-reported symptoms." He could be rendered incapable of walking on his own due to dizziness, or so fatigued as to require assistance

every time he left his home; nevertheless, under the terms of the policy, his benefits would be limited to twelve months. Like dizziness and fatigue, the headaches which may be disabling Hubert have been, for the most part, incapable of clinical verification. It is that lack of clinical verification that the Unum policy treats as a trigger for the twelve month limitation.

The court passes no judgment on the fairness of an insurance clause which reduces the length of time disability payments are provided merely because of difficulties associated with tracing or verifying a disability's etiology. Fair or not, the policy provision is not difficult to understand and defines the benefit provided and paid for, at least in part, by Hubert's employer. Presumably, disability insurance products with broader coverage could have been made a part of the benefit plan at a higher cost, but they were not, and there is no law which compels an employer to provide any disability benefits. The provisions of ERISA invoked by Plaintiff in this lawsuit merely require that any discretionary decision to deny benefits be reasonably founded in the terms of the Plan or policy. *See Davis v. Unum Life Ins. Co. Of America,* 444 F.3d 569 (7th Cir. 2006).

Huberts does argue that there is some clinical evidence which confirms his reports of debilitating headaches and that this evidence has been misconstrued by Unum. Dr. Larry LaClair, an in-house Unum doctor, performed a review of Hubert's claim in January of 2006. He recognized from the medical records that on some occasions when Huberts went to Dr. Scott and was complaining of the "stabbing pain" type of headaches,

9

the complaint was accompanied by a drooping of his right eyelid or "ptosis," which is an objective clinical finding consistent with some types of headaches. Robert K. Ausman, M.D. & Dean E. Snyder M.D., *Medical Library, Lawyers Edition* § 6:28 (1990). However, Dr. LaClair opined that the records indicated that these were a very small proportion of the headaches suffered by Huberts and, even considering all the headaches Huberts experienced, the less frequent, severe headaches of shorter duration were not enough to keep him from performing full time work. He shared his opinion with Dr. James Weintraub, a headache specialist and one of Plaintiff's treating neurologists, who responded by indicating his agreement.

As indicated earlier, it is not Dr. LaClair's conclusion regarding disability that is at the heart of the issue here. The issue here is whether the "right ptosis", a drooping of the eyelid, which accompanied some of Plaintiff's reported headaches of the stabbing pain variety, is enough clinical verification of symptoms to take his disability out of the category of one which is "primarily based on self-reported symptoms." Or, more precisely when put into context, the court must determine if Unum acted arbitrarily in deciding that Huberts' disability, if any, is primarily based upon symptoms which are "not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine." During the first 12 months, Huberts could obtain disability benefits if he could show that he could not perform the material and substantial duties of his regular occupation, even if his disability was primarily due to "self-reported

symptoms." After 24 months, the definition of "disability" changed to require proof that Plaintiff could not perform the duties of any gainful occupation. Moreover, even if he was unable to work at any gainful occupation, if his disability was primarily due to self reported symptoms, his benefits were still limited to a maximum of 12 months.

When Dr. LaClair completed his review of Huberts' file, he wrote a report which included the following statements:

> He has more than one "type" of headache and I am not able to determine on the basis of the voluminous information in the file exactly what percentage of his headaches fall into the category of "right sided frontal headaches with ptosis." These severe headaches with right ptosis seem to be a small minority of his daily headaches.
> His neurologist released him to return to work in his own/any occupation on 2/14/2005 and has only limited him from working during periods of inpatient hospitalization. No other physician is providing support for ongoing impairment at this time.
> ...
> A telephone call will be placed to Dr. Weintraub to try to clarify the frequency of the severe right frontal headaches that are accompanied by right ptosis to see if they are frequent enough to be considered physically impairing him.

Dr. Weintraub was unwilling to talk with Dr. LaClair over the telephone without a signed patient authorization in hand, so a letter was sent by Dr. LaClair on January 10, 2006, which, in addition to inviting Dr. Weintraub to call to discuss Mr. Huberts' circumstances, stated in pertinent part:

> I am a Physician at Joseph Hubert's disability insurance carrier, .... I spoke with you briefly and you said that you were in a clinic and needed a patient signed release for medical information before you could answer my questions. We agreed that I would send a letter with my questions for you

11

to consider. ...

The purpose of this call was to gain a better understanding of your medical opinion and discuss questions we had regarding our interpretation of the medical data available.  We do not want to try to influence your clinical management of your patient.  So that you may prepare for our conversation, I have listed my questions regarding Joseph Huberts' condition below:
...
1.  What is the frequency of Mr. Huberts' severe right frontal headaches that are associated with right ptosis? _____ per week/month.

2.  Do you agree that his chronic daily headaches are, with the exception of the occasional severe headache with which he has right ptosis, are self reported and not associated with objective findings on examination and diagnostic studies? __YES __NO

3.  If NO, please explain in detail what objective findings you have documented to support a physical cause for his chronic daily headaches.

The letter to Dr. Weintraub went on to describe the policy limitations with regard to disability and, specifically, the limitations for disabilities based on self-reported symptoms.  It also summarized Dr. LaClair's opinion that while some headaches were accompanied by right ptosis, the majority of the headaches "appear to be self-reported headaches for which there are no objective findings and for which his contract provides a limitation of benefits."  It invited Dr. Weintraub to respond to the questions in writing, including any confirmation of Dr. LaClair's opinions, if he preferred, and concluded by indicating that Unum would pay him for any time he spent responding to its questions.

Dr. Weintraub responded by returning the letter with his answers to the first two questions written in the blanks provided.  He responded to the first question by indicating

12

that the severe headaches came at a frequency of three per week as of November 28, 2005.  In response to the second question, Dr. Weintraub checked the box indicating that he agreed with Dr. LaClair's opinion regarding the self-reported nature of the majority of Huberts' headaches.

Huberts was notified of Unum's initial decision to deny further benefits in a letter dated April 21, 2006.  In the letter, Huberts was informed that Unum was aware that he had been determined qualified for social security disability income benefits, but that, unlike the benefits offered through the Unum policy, the social security benefits were not limited in time for disabilities based on self-reported symptoms.  The appeal procedures offered by the Plan were described in detail in the letter, along with Huberts' right to submit further documentation from his physicians.

On appeal, Huberts did submit a letter from another neurologist, Dr. Charles Bonsett, who opined on November 22, 2006, that the two MRIs taken of Hubert in December of 2003 and February 2005 showed cervical spine abnormalities which he associates with osteoarthritis and a possible source of the patient's neck pain and headaches.  Dr. Bonsett's letter does not state with any medical certainty that osteoarthritis is the clinically demonstrated cause of Huberts' debilitating headaches and agrees that no single etiological factor has been established as the root of Hubert's problems.  He opines that there are probably several causes, but Dr. Bonsett's report does little other than suggest further studies need to be done to identify a source of the pain

problems and state that a referral to a neuro-opthalmologist might provide further enlightenment with regard to the right ptosis.  In any event, Plaintiff has made no effort in this lawsuit to claim that Dr. Bonsett's report establishes a basis for overturning the denial of his disability benefits.

In addition to the letter from Dr. Bonsett, as a part of his appeal, Huberts submitted a letter from his latest treating neurologist, Dr. Patrick Matoole.  In his November 22, 2006 letter, Dr. Matoole simply opines that Huberts was "disabled because of his medical problems."  There is no indication from Dr. Matoole of any clinical confirmation of Huberts' self-reported symptoms.  Nor did Huberts submit any further information from Dr. Weintraub, that might support his argument that Dr. Weintraub's earlier responses were misinterpreted.  In short, nothing submitted during the appeal process provided UNUM with the type of information that might dictate an alternative conclusion.

## Conclusion

The Seventh Circuit has said that "it is hard to overturn a decision of a plan administrator."  *James v. General Motors Corp.*, 230 F.3d 315, 317 (7th Cir. 2000).  Where, as here, the decision is based on a rational interpretation of the Plan and the medical information at hand, the court will not set aside the determination.  *Id.*  If the question at hand were merely whether or not Plaintiff was disabled, this court would have had a much tougher decision to make.  However, the Plan/policy at issue here provides a

limited disability benefit for disabilities "primarily based on self-reported symptoms." It specifically lists "headaches" as an example of a self-reported symptom and there is no question that Huberts bases his claim of disability on those headaches. While the ptosis may constitute some clinical confirmation of the existence of one of the types of headaches complained of by Huberts, his disability, if any, is still "primarily based on self-reported symptoms."

The Defendant is entitled to judgment in its favor and, accordingly, such a judgment will be separately entered.

**SO ORDERED** this 7th day of March 2008.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Eric P. Mathisen
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
eric.mathisen@ogletreedeakins.com

Mark E. Schmidtke
OGELTREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
mark.schmidtke@ogletreedeakins.com